**Eric S. BORD, Plaintiff,**

v.

**BANCO DE CHILE and United States Department of Commerce, Defendants.**

**No. CIV.A.01–1360–A.**

United States District Court, E.D. Virginia, Alexandria Division.

May 15, 2002.

Robert B. Walker, Law Office of Robert B. Walker, Herndon, VA, for Eric S. Bord, plaintiff.

John F. Anderson, Richards McGettigan Reilly & West, PC, Alexandria, VA, for Banco de Chile, defendant.

Steven E. Gordon, U.S. Attorney's Office, Alexandria, VA, for U.S. Department of Commerce, defendant.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This matter comes before the Court on Defendant Department of Commerce's motion to dismiss. This action arises out of the registration of the domain name bancochile.com by the Plaintiff. Defendant Banco de Chile subsequently challenged the registration with an arbitration panel at the World Intellectual Property Organization (hereinafter "WIPO"). The WIPO arbitration panel found that the Plaintiff's registration of the domain name bancochile.com infringed upon the trademark rights of Banco de Chile, and ordered the transfer of the domain name to Banco de Chile. The Plaintiff then brought this action seeking declaratory relief against Banco de Chile under 28 U.S.C. § 2201, 15 U.S.C. § 1114(2)(D)(v), and 15 U.S.C. § 1125. Plaintiff's First Amended Complaint also seeks relief against Defendant United States Department of Commerce (hereinafter "DOC") on three counts: judicial review of agency action pursuant to 5 U.S.C. § 702 et seq. (Count One), unlawful delegation under the United States Constitution (Count Two), and violation of 5 U.S.C. § 575(a)(3) (Count Three).

In 1997 a Presidential Directive ordered the DOC to privatize the management of the Internet's Domain Name System. Pursuant to this Directive, the DOC entered into a Memorandum of Understanding with the Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN"), a non-profit corporation. Under the Memorandum of Understanding

ICANN agreed to collaborate with the DOC to encourage competition in domain name registration and to develop consistent procedures by which to accredit registrars.

In 1999 ICANN entered into an agreement with Network Solutions, Incorporated (hereinafter "NSI") which allowed NSI to continue to register domain names. This agreement also allowed for other entities to serve as domain name registrars, provided that such entities entered into a registrar accreditation agreement with ICANN. These registrar accreditation agreements mandate that all registrars include in their contracts with individual registrants certain provisions. One of the provisions that must be included in each domain name registration contract is a stipulation that the registrant will submit to a non-binding arbitration in the event that a third party claims the registration is abusive and violative of a trademark right. This arbitration procedure mandated by the accreditation agreement is the Uniform Dispute Resolution Procedure (hereinafter "UDRP"). Judicial review of UDRP proceedings is *de novo* and the UDRP itself applies existing U.S. trademark law.

In this action, as against the Defendant DOC, Plaintiff is seeking to enjoin the continued use of the UDRP. Plaintiff alleges that the implementation and use of the UDRP violates the Due Process Clause of the Fifth Amendment, the delegation doctrine, and the Administrative Dispute Resolution Act. Defendant DOC argues that the suit should be dismissed as to the Government because the Plaintiff lacks standing to assert the suit.

 The Supreme Court clearly explained the requirements for standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) 'actual or imminent', not 'conjectural' or 'hypothetical,' ... Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' ... Third, it must be "likely," as opposed to merely "speculative," that the injury will be 'redressed by a favorable decision.' *Id.* at 560, 112 S.Ct. 2130 (internal citations omitted).

The burden of proving that standing exists rests with the Plaintiff and must be supported by sufficient evidence. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir.1997); *Piney Run Preservation Association v. County Commissioners of Carroll County, Maryland*, 268 F.3d 255, 263 (4th Cir.2001). This Court agrees with the DOC argument that Plaintiff has failed to meet all three requirements of the test for standing.

The Plaintiff in this action has not suffered an injury in fact as a result of any action taken by the DOC that is both concrete and particularized and is neither conjectural nor hypothetical. The Plaintiff, by entering into a private contract with a domain name registrar, agreed to an dispute resolution policy that calls for arbitration. The arbitration process applies existing trademark law to the facts of the case. Further, such arbitration is non-binding and permits the registrant to seek a *de novo* review of the dispute in federal court. Clearly under these circumstances the Plaintiff cannot assert that he has suf-

fered a concrete and particularized injury due to the promulgation of the UDRP. Plaintiff voluntarily entered into a private contract containing this dispute resolution policy and, as is evidenced by the current suit in this Court, has not suffered any particularized injury by submitting to the arbitration process. Thus, Plaintiff fails to meet the first test for standing, and cannot maintain this action as against the Defendant DOC.

Plaintiff also does not meet the second requirement for standing because he fails to show that his "injury" is causally connected to the actions of the Defendant DOC. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. ICANN, the corporation which adopted and requires the UDRP, is a private entity. The registrars that include the UDRP as a part of their registration agreements are private entities. The contract between domain name registrants and the registrars are private contracts. Plaintiff in this case entered into a private contract with a domain name registrar which, in turn, had a private contract with ICANN. The DOC was not a party to either of these contracts. Indeed, the DOC's only involvement in the implementation of the dispute resolution policy adopted by ICANN comes from the Memorandum of Understanding (hereinafter "Memorandum") between the DOC and ICANN and a Statement of Policy entitled Management of Internet Names and Addresses (hereinafter "Policy Statement").

The Policy Statement recommended the development of a private entity to oversee the Domain Name System and that such private entity adopt specific policies designed to reduce trademark disputes between domain name registrants and mark owners. In addition, the Policy Statement indicated that the United States would request that WIPO develop recommendations to present to the private entity.

None of the recommendations in the Policy Statement required a specific dispute resolution policy be adopted by ICANN.

The Memorandum between DOC and ICANN does not bind ICANN in any way to commit to a dispute resolution policy, nor does it require ICANN to compel registrants to agree to a dispute resolution policy. Rather, the Memorandum commits ICANN to generally consider trademark issues in determining how disputes should be resolved. Thus, Plaintiff's allegations that the DOC promulgated the UDRP simply cannot be supported by either the Memorandum nor the Policy Statement. As the Supreme Court held in *Lujan,* standing cannot be premised upon "the independent action of some third party not before the court". 504 U.S. at 560, 112 S.Ct. 2130. In this case, the Plaintiff alleges that the promulgation of the UDRP has injured him. As was previously discussed, the UDRP is the result of independent contracts between private entities, therefore the promulgation of the UDRP is not causally connected to the actions of the DOC. For these reasons, Plaintiff fails to meet the second requirement for standing.

Finally, because the Plaintiff cannot show the connection between the DOC and the promulgation of the UDRP, Plaintiff cannot meet the third test for standing. Plaintiff fails to show that a decision in his favor would redress his "injury." *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. The DOC did not develop the UDRP, nor is the DOC a party to any contract which requires the UDRP. Plaintiff seeks to enjoin the continued use of the UDRP, but an injunction against the DOC would have no effect upon the continued use of this policy by the private entities ICANN and NSI. Therefore, Plaintiff has failed to show that it would be likely that a favorable decision would redress his injury.

Because the Plaintiff lacks standing to sue the Department of Commerce, Plaintiff's action against the Department of Commerce should be dismissed. An appropriate order shall issue.

*ORDER*

For the reasons stated in the accompanying memorandum opinion, it is hereby,

ORDERED that Defendant Department of Commerce's motion to dismiss Counts One (1), Two (2) and Three (3) of Plaintiff's First Amended Complaint is GRANTED and Counts One (1), Two (2) and Three (3) of Plaintiff's First Amended Complaint are hereby DISMISSED.